**2015-1066**

# United States Court of Appeals
*for the*
# Federal Circuit

COMMONWEALTH SCIENTIFIC AND
INDUSTRIAL RESEARCH ORGANISATION,

*Plaintiff-Appellee,*

*v.*

CISCO SYSTEMS, INC.,

*Defendant- Appellant.*

*Appeal from the United States District Court for the Eastern District of Texas in No. 6:11-cv-00343, Judge Leonard Davis*

**BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC. IN SUPPORT OF COMMONWEALTH SCIENTIFIC INDUSTRIAL RESEARCH ORGANISATION**

D. TENNELL LOCKETT

TOWNSEND & LOCKETT, LLC
1401 Peachtree Street
Suite 500
Atlanta, GA 30309
Telephone: 404-870-8501

*Attorneys for Amici Curiae Nokia Corporation and Nokia USA Inc.*

April 13, 2015

## CERTIFICATE OF INTEREST

Counsel for *amici curiae* Nokia Corporation and Nokia USA Inc. certifies the following:

**1.     The full name of every party or amicus represented by me is:**

Nokia Corporation and Nokia USA Inc.

**2.     The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

Not Applicable.

**3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Nokia Corporation has no parent corporation and no publicly held company owns 10 percent or more of its stock.

Nokia USA Inc.'s parent corporation is Nokia Corporation.  Nokia Corporation owns 100 percent of the stock in Nokia USA Inc.

**4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:**

Townsend & Lockett, LLC: D. Tennell Lockett.

Dated: April 13, 2015                          */s/ Tennell Lockett*
                                                        D. Tennell Lockett

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE*................. 1

SOURCE OF AUTHORITY TO FILE .................................................... 2

INTRODUCTION ................................................................................. 2

ARGUMENT ....................................................................................... 4

    I.    There Is No Per Se Rule That The Smallest Salable Unit Must Serve As the Royalty Base ................................................................4

    II.    Chips Cannot Serve As An Adequate Royalty Base Where Those Chips Alone Do Not Embody The Claimed Invention ............11

CONCLUSION .................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) ......... passim

*GPNE Corp. v. Apple, Inc*., 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014)............12

*LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51 (Fed. Cir. 2012) 11, 12

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009)......... 8, 10, 12

*Quanta Computer, Inc. v. LG Elecs., Inc*., 553 U.S. 617 (2008).............................12

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995).............12

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc*., 862 F.2d 1564 (Fed. Cir.
1988) .................................................................................................................10

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ....................7

*Univ. of Pittsburgh of Commonwealth System of Higher Educ. v. Varian*, 561 Fed.
App'x 934 (Fed. Cir. 2014)..................................................................................8

**Statutes**

35 U.S.C. §284 ........................................................................................................2

**STATEMENT OF IDENTITY AND INTEREST OF *AMICI CURIAE***

Amici are Nokia Corporation and Nokia USA Inc. ("Nokia").[1]  Nokia is a leading innovator in the telecommunications industry.  Nokia has cumulatively invested approximately EUR 50 billion in research and development relating to mobile communications, and as a result of this commitment, currently owns more than 10,000 patent families.  Nokia was one of the largest manufacturers of wireless handsets for many years, and continues to invest heavily in research and development, and to license and expand its industry-leading patent portfolio.  For example, Nokia's recently formed Technologies business unit continues to develop and license innovations that are powering the next revolution in computing and mobility: the "programmable world" where intelligent connections bring millions of everyday objects online.

Nokia has been involved in numerous patent cases in U.S. district courts, both as a plaintiff and a defendant, including cases where monetary damages in the form of a reasonable royalty were sought by or against Nokia.  Nokia is a significant patent owner that might seek monetary damages, including reasonable royalties, for certain kinds of patent infringement, for example, damages for past infringement, in U.S. district courts.

---

[1]    No counsel for any of the parties authored any portion of this brief.  No entity other than *amici curiae* Nokia Corporation and Nokia USA Inc. monetarily contributed to the preparation or submission of this brief.  *See* Fed. R. App. P. 29(c)(5).

Nokia's interest in this case is to advocate for a balanced and appropriate statement and application of legal standards governing the application of the smallest salable unit construct in the reasonable royalty analysis. Companies like Nokia must be assured that their past, present, and future substantial research and development efforts are protectable under the U.S. patent regime, and that upon an appropriate request and showing they are able to be properly and adequately compensated for unauthorized uses of their patented technologies.

## SOURCE OF AUTHORITY TO FILE

*Amici* file this brief with the consent of all parties to this appeal.

## INTRODUCTION

The Patent Act makes clear that a patent owner whose valid patent has been infringed is entitled to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer…" 35 U.S.C. §284. When the invention at issue is a part of a salable unit priced appropriately to account for the intellectual property that is embodied within it, the value of the invention may be calculated by determining the portion of the unit price (or profit) that is attributable to the invention. Thus, this court has held previously that under suitable facts the appropriate base for calculating a reasonable royalty may be the smallest salable unit that embodies the invention.

The smallest salable unit approach, however, is necessarily premised on the assumption that such identified smallest unit embodying the invention appropriately accounts for the invention's value. That assumption may be incorrect, however, due to consumer behavior or industry practices. For example, industry participants may elect to not include appropriate intellectual property costs in their pricing models, or to include the costs of intellectual property only at the end product level instead of at the level of the identified smallest salable unit within that end product. In those circumstances, the price of the smallest salable unit does not factor in the value of the invention, and cannot provide a basis for determining a reasonable royalty.

The district court found below that this was such a case because the cost of the chipsets at issue did not account for the value of the invention due to rampant infringement by the industry. Although Nokia takes no position on that factual finding, it agrees with the district court that the smallest salable unit should not be used to impose an arbitrary limit on the value of an invention. Limiting the royalty base to a price that does not include appropriate value of the invention, and then even further apportioning that unit-price, is an exercise in futility because the value of the invention has no relationship to the unit price. As this Court explained in *Ericsson v. D-Link,* to adequately compensate for use of an invention in that context, one must look at the value of the invention to the product as a whole (or to

consumers that use the product), and calculate damages that adequately assess that value. *Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). If the facts demonstrate that industry participants do not appropriately account for the cost of intellectual property, or only do so at the end product level or using some other mechanism, then it is not only proper, but also necessary, to consider those facts in arriving at an appropriate royalty. There should be no rigid rules that prohibit consideration of the particular facts of a case or that requires that all damages calculations be based on an arbitrary smallest salable unit analysis.

In addition, application of the smallest salable unit doctrine is not appropriate unless the invention is in fact embodied in that identified smallest unit. The district court properly rejected the argument that the smallest salable unit need only contain the "inventive aspect" of a broader invention.

## ARGUMENT

### I.   THERE IS NO PER SE RULE THAT THE SMALLEST SALABLE UNIT MUST SERVE AS THE ROYALTY BASE

The district court found that a royalty based on the sales volume of end products was appropriate (A25). In reaching that conclusion, the court considered the patentee's conduct licensing the same technology to industry participants and concluded that (i) the price of the chipset did not properly value the invention and (ii) the patent holder's practice (and preference) was to license the invention at the end product level (*see* A23, A25). Nokia takes no position regarding the factual

findings made by the district court, but if the district court's conclusions regarding industry practice are correct, Nokia submits that it was appropriate for the district court to use the end product as the base for calculating a reasonable royalty.

This Court has recently confirmed that there is no per se rule that the smallest salable unit (such as a chipset incorporated into a multi-component product) must serve as the royalty base in a damages determination. *Ericsson*, 773 F.3d at 1226. The Court's conclusion is consistent with two of the important considerations underlying the smallest salable unit doctrine. First, as a legal matter, "the governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Id.* This royalty base need not be the smallest salable unit, but rather depends on the facts of the case:

> When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. . . . Logically, an economist could do this in various ways – by careful selection of the royalty base to reflect the value added by the patented feature, *where that differentiation is possible*; *by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.* The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.

*Ericsson*, 773 F.3d at 1226 (emphasis added). As acknowledged by the Court, selection of a smaller royalty base is not always possible, or appropriate, in a royalty analysis. For this reason, an economist may use other approaches to assess

5

the value of an invention in the context of its use in a particular product in a particular industry.  Where, as was the case here, industry practice values intellectual property at the end product level, it was appropriate to use the end product as the base and adjust the royalty rate, if and as appropriate, to discount the value of the end product's non-patented features.

A second important consideration with respect to the application of the smallest salable unit rule is an evidentiary one.  Specifically, this Court has acknowledged the concern that where a multi-component product contains both patented and non-patented features, a jury might be misled if a party places an "undue emphasis" on the entire value of the entire accused product. *Id.*  The Court, however, confirmed in its *Ericsson* opinion that this is not an absolute prohibition against relying on the entire market value as the royalty base.  *Id.* at 1227 ("[I]t is not that an appropriately apportioned royalty award could never be fashioned by starting with the entire market value of a multi-component product – by, for instance, dramatically reducing the royalty rate to be applied in those cases.").  Rather, the Court has advised that the evidentiary consideration mandates that care must be taken to assure that a realistic starting point is used for royalty calculations.  *Id.* at 1227.

The smallest salable unit cannot, however, accurately serve as a royalty base if that smallest unit is not priced to appropriately account for the intellectual

property it contains. Stated differently, in order to rely on a royalty analysis dependent on a smallest salable unit, the appropriate value of the patented features must necessarily be included within the price of that smallest salable unit. Where that value is not appropriately taken into account, the smallest salable unit does not bear a sufficient relationship to the value of the patented invention. Instead, the better approach would be to rely on a royalty base (such as the consumer product) that does take the proper value of the patented invention into account and to avoid rigid rules that fail to take into account the realities of the marketplace. Otherwise, the smallest salable unit construct would amount to nothing more than an arbitrary rule on patent damages – a principle that has been, and should continue to be, rejected. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (rejecting the 25% royalty rate rule as "arbitrary, unreliable, and irrelevant").[2]

---

[2] Cisco and its *amici* in this appeal nevertheless suggest that rigid rules should be adopted, in particular when RAND-encumbered patents are at issue. For example, Apple argues in its brief that the threat of "hold-up" and "royalty stacking" in such a context mandates that damages always be based on the chipset as the smallest salable unit (*see* Brief of Apple Inc. at 19-24). This Court, however, has rejected such rigid rules, holding instead that consideration of such issues is only appropriate where there is "actual evidence of hold-up or stacking." *See Ericsson*, 773 F.3d at 1234-35 ("[W]e hold that, in all cases, a district court must instruct the jury *only* on factors that are relevant to the specific case at issue. There is no *Georgia-Pacific*-like list of factors that district courts can parrot for every case involving RAND-encumbered patents."). Consistent with *Ericsson*, the damages analysis here properly adjusted the analysis to consider the particular facts of the case and account for an appropriate value of the invention at issue.

When the circumstances of a particular case indicate that reliance on the smallest salable unit construct is not appropriate, a court is still capable of ascertaining damages for infringement by, for example, determining the value added to an end product as a result of the patented invention. Such damages may be based on, for example, a fixed per-unit rate, or an appropriate percentage rate, so long as the chosen approach accurately reflects the value and benefits of the invention to the product as a whole. *Ericsson*, 773 F.3d at 1226; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009); *see also Univ. of Pittsburgh of Commonwealth System of Higher Educ. v. Varian*, 561 Fed. App'x 934, 947 (Fed. Cir. 2014) ("[I]f the claimed invention adds significant value to the conventional element(s), the damages award may reflect that value.").

Importantly, and contrary to what Cisco suggests, it is not simply the incremental value a patented combination offers over the prior art that is determinative in a royalty analysis (*see* Brief of Cisco Sys. at 49-50). Nor is it proper for a court to limit damages based on the incremental value a patented combination has over competing alternatives that may have existed at the time of the invention (*see id.* at 60). Rather, as stated recently by this Court, "the ultimate reasonable royalty award must be based on the incremental value that the patented invention *adds to the end product*." *Ericsson*, 773 F.3d at 1226. This analysis requires a comparison of the value and benefits added by the infringing

functionalities to the product, not the value of the patented invention over the next best alternative as some commentators have suggested.

In addition, this Court has recognized that a proper damages analysis should not ignore the realities of the marketplace. If industry practices (e.g., licenses in the industry) account for the value of intellectual property by calculating royalties on the end product, it is entirely appropriate for infringement damages to be calculated in the same manner. For example, as this Court explained in *Ericsson v. D-Link,* a court should not disregard prior industry licenses relying on end products, especially where those licenses may serve as the most relevant evidence to the royalty analysis. *See id.* at 1227-28 ("Such evidence is relevant and reliable, however, where the damages testimony regarding those licenses takes into account the very types of apportionment principles contemplated in *Garretson.*"). In fact, many industry participants, such as those in the telecommunications industry, rely on technology licenses covering end products, not a smaller component contained therein. Because the costs attributable to intellectual property are licensed at the end product level, the component prices within the product often do not include appropriate costs associated with the intellectual property that is embodied in a given component. When that is the case, the price of the identified smallest salable component has no real relationship to the value of the intellectual property it contains, and it cannot reasonably provide insight into an appropriate royalty for

that intellectual property.  Ignoring this reality and instead insisting on a rigid rule

that requires all analysis to begin with the smallest salable unit puts form over

substance and devalues innovation.  Indeed, this Court has previously cautioned

against methodologies "far-removed from what parties regularly do during real-

world licensing negotiations." *Lucent Techs.*, 580 F.3d at 1338-39.  Because

private parties often rely on royalty rates at the end product level, a hypothetical

negotiation seeking to determine the result of an arms-length bargain should

similarly consider that licensing practice where appropriate. This Court has

recognized as much on numerous occasions. *See id.* at 1339 ("[E]ven when the

patented invention is a small component of a much larger commercial product,

awarding a reasonable royalty based on either sale price or number of units sold

can be economically justified."); *see also Ericsson*, 773 F.3d at 1228;

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1568 (Fed.

Cir. 1988) (noting that it was error to arrive at a royalty award inconsistent with

"the usual practice in the industry").

Accordingly, if the district court's factual findings in this case that the

identified smallest salable unit did not appropriately account for the value of the

intellectual property it contained are correct, it was entirely appropriate for the

district court to use the end product as the royalty base.  Determination of a

reasonable royalty must properly assess the value of the intellectual property at issue. There should be no per se rules that prohibit such an assessment.

## II. CHIPS CANNOT SERVE AS AN ADEQUATE ROYALTY BASE WHERE THOSE CHIPS ALONE DO NOT EMBODY THE CLAIMED INVENTION

This Court should also affirm the district court's determination that reliance on chipsets as the royalty base was not appropriate under the circumstances in this case because the smallest salable unit that actually practiced the patent was the end product. Based on the record below, the district court concluded that, although the chipset contained the "inventive aspect" of the invention, the asserted claims recited elements that were not present on the chipset. Under such circumstances, the chipset could not qualify as the smallest salable unit because, even when properly using the smallest saleable unit construct, royalties are to be based on the "smallest salable *patent-practicing* unit." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (emphasis added). In order to practice a patented invention, every single element of the invention must be present in the accused device. On the record below, it is undisputed that certain claim elements were not present on the chipset and instead resided in the larger end product. Therefore, even using this construct, the smallest salable unit embodying the claimed invention was the end product.

Appellant suggests that the smallest salable unit is the unit that contains the "inventive aspect." There is, however, no "inventive aspect" test for infringement, or under the smallest salable unit damages precedent.[3] The relevant inquiry is not what component of an end product contains an "inventive aspect" of the invention, but rather what salable component contains *all* of the claimed elements. Where a claim recites elements embodied only in an end product, any smaller component within that end product could not satisfy this Court's smallest salable unit standard. In such situations, the royalty base is appropriately based on the value of the end product, as opposed to some smaller component not practicing all of the claim elements. *LaserDynamics, Inc.*, 694 F.3d at 67 (discussing the "smallest salable patent-practicing unit"); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."). Here, the district court expressly found that "the chip itself is not the invention" (A23), but rather a "combination of techniques" that solved a broader problem (A23). Assuming those conclusions are correct, the smallest salable unit is the end product that embodies that combination.

---

[3]    Reliance on *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. 2009), *GPNE Corp. v. Apple, Inc*., 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014), and *Quanta Computer, Inc. v. LG Elecs., Inc*., 553 U.S. 617 (2008) is not appropriate in this context, as these cases do not support or mention any "inventive aspect" test in the reasonable royalty analysis.

# CONCLUSION

For the reasons set forth above, amici urge this Court to reject any categorical restriction that prevents a fact finder from accounting for industry practices in determining a reasonable royalty.  In particular, amici urge this Court to hold that its smallest salable unit methodology applies, if otherwise appropriate, only to the smallest salable unit that appropriately accounts for the proper value of the patented invention.  When the price or cost of the smallest salable unit that embodies an invention does not include the appropriate value provided by the invention, it should not be determinative in assessing a reasonable royalty. Additionally, this Court should reject the proposition that the smallest salable unit for damages purposes is the smallest unit comprising the "inventive aspect" of a claimed invention, and instead reaffirm the rule that the smallest salable unit construct can only be applied, if otherwise appropriate, in situations where that identified unit actually practices every limitation of the claimed invention.

Date:  April 13, 2015                    Respectfully submitted,

                              By:    */s/  Tennell Lockett*

                                   *Attorneys for Amici Curiae Nokia*
                                   *Corporation and Nokia USA Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b) and 32(a)(7)(B).  This brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), contains 3,246 words.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief, including footnotes, has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Date:  April 13, 2015                    By:    /s/    Tennell Lockett

*Attorneys for Amici Curiae Nokia
Corporation and Nokia USA Inc.*

14

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

*Commonwealth Scientific Indus. Research Org. v. Cisco Sys., Inc.,
2015-1066*

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on April 13, 2015, the foregoing

BRIEF OF *AMICI CURIAE* NOKIA CORPORATION AND NOKIA USA INC.

IN SUPPORT OF COMMONWEALTH SCIENTIFIC INDUSTRIAL

RESEARCH ORGANISATION was filed using the Court's CM/ECF system,

which will send notice of such filing to all registered CM/ECF users.


By:    /s/    Tennell Lockett

*Attorney for Amici Curiae Nokia
Corporation and Nokia USA Inc.*